Robert Muller (SBN 189651)
bob@cypressllp.com
Jessica P.G. Newman (SBN 309170)
jessica@cypressllp.com
**CYPRESS LLP**
11111 Santa Monica Boulevard, Suite 500
Los Angeles, CA 90025
Telephone: 424-901-0123
Facsimile: 424-750-5100

Attorneys for Plaintiff
Million Source Limited, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLION SOURCE LIMITED, INC. a Hong Kong Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PLASTIC-VIEW A.T.C., INC. a California Corporation and LENNY VENTURES, LLC, a Virginia Limited Liability Corporation,<br><br>Defendants. | **Case No. 2:22-CV-02166**<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br>**(2) MONEY HAD AND RECEIVED**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Million Source Limited, Inc. ("MSL" or "Plaintiff") for its complaint against Plastic-View A.T.C., Inc. ("Plastic-View") and Lenny Ventures, LLC ("Lenny Ventures") (collectively "Defendants"), alleges:

## INTRODUCTION

1. MSL is a Hong Kong entity with an affiliate that supplies personal protective equipment ("PPE"). In late 2021, MSL recognized a new opportunity in the PPE market. MSL believed that it could facilitate delivery of essential PPE by delivering large quantities of medical gloves through its existing network.

2. Plastic-View is a California corporation that holds itself out as having more than 70 years of experience in manufacturing. In 2006, Plastic-View purports to have received an Export Achievement Certificate from the United States Department of Commerce, which in Plastic-View's words, is presented to companies "that standout in the global marketplace." Plastic-View also claimed to supply more than 90 nations with its products and previously supplied major customers such as Chicago-O'Hare International Airport, Delta, United, Continental, American Airlines, BNSF Railway, the Federal Aviation Administration and the United States Air Force, Army and Navy. Plastic-View represented to MSL that it could leverage its existing experience and connections and pivot to the PPE market in the midst of the Covid-19 Pandemic.

3. In December 2022, MSL and Plastic-View entered into a Supply and Purchase Agreement pursuant to which Plastic-View agreed to supply MSL with "Cranberry Evolve 300" medical gloves to be delivered to a warehouse in Los Angeles, California, in monthly lots over the next twelve months. Lenny Ventures was designated by Plastic-View as the nominee to hold in escrow the funds paid by MSL as a deposit for use to acquire the gloves. The agreement provided that Plastic-View was to arrange for inspection of each shipment prior to delivery. Plastic-View agreed to provide the first shipment within 15 calendar days of signing the agreement and MSL's wiring of a US $1,250,000.00 deposit. Plastic-View directed MSL to wire

the funds to an account at Chase Bank, N.A. held in the name of the nominee, Lenny Ventures. On January 5, 2022 MSL wired the deposit. MSL did not receive the first shipment of gloves.

4. In the weeks and then months that followed, Plastic-View continued to promise that delivery would soon take place. Again, MSL did not receive any shipment of the goods. On multiple occasions, Plastic-View scheduled inspection of the goods in warehouses purportedly located in Southern California. On multiple occasions, Plastic-View informed MSL that the goods were being shipped to a Los Angeles warehouse for inspection by MSL. On each occasion, Plastic-View cancelled the inspections at the last minute.

5. In February 2022, when it became clear that Plastic-View and Lenny Ventures lacked the ability to perform as agreed, MSL demanded the return of its deposit. Plastic-View and Lenny Ventures failed to return the funds. Instead, they continued to make promises and provided assurances that the long-overdue goods would be delivered soon.

6. In March 2022, MSL notified Plastic-View and Lenny Ventures of its cancellation of the agreement and again demanded the immediate return of its deposit. Lenny Ventures did not respond. Plastic-View ignored MSL's cancellation notice and reverted to the same tired excuses, promising that delivery would take place "in the very near future."

7. Subsequently, Plastic-View sent a demand letter to a United Kingdom entity called ACM Holdings LTD ("ACM") and Lenny Ventures. The letter, which included a convoluted back story, confirmed that Plastic-View had not previously demanded the return of the Deposit. Neither ACM nor Lenny Ventures responded to the letter. As of this date of this Complaint there has been no further communication from Plastic-View. Nearly three months after entering into the Supply and Purchase Agreement, MSL has nothing but considerable and mounting losses to show for it. The harm to MSL caused by Plastic-View and Lenny Ventures' wrongful conduct is

substantial. In addition to the potential loss of its $1,250,000.00 deposit, MSL has suffered considerable economic and reputational damage. MSL needs the immediate return of its deposit. Plastic-View and Lenny Ventures must be compelled to do so. They also need to held accountable for their failure to live up to their obligations and the harm caused to MSL's business and reputation.

## PARTIES

8. Plaintiff Million Source Limited, Inc. is a corporation incorporated under the laws of Hong Kong.

9. Defendant Plastic-View A.T.C., Inc. is a California corporation with its principal place of business in Simi Valley, California.

10. Defendant Lenny Ventures, LLC, is a Virginia Limited Liability Company with its principal place of business in Fredericksburg, Virginia.

## JURISDICTION

11. This Court has jurisdiction in this action pursuant to 28 U.S.C. Section 1332 in that it is a civil action between citizens of a state and citizens of a foreign state, and wherein the matter in controversy is alleged to exceed the sum of $75,000, exclusive of interest and costs.

## VENUE

12. The Court is the proper venue for this action under 28 U.S.C. Section 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

**I. Plastic-View Agrees to Supply Medical Gloves to MSL**

13. In late 2022, Plastic-View represented to MSL that it had access to significant quantities of medical grade gloves and could arrange for shipment to MSL.

14. On December 29, 2021, MSL received an Undertaking Letter signed by Lenny Ventures, a Virginia LLC, and dated December 29, 2021. A true and correct

copy of the Undertaking Letter is attached as Exhibit 1. Per the Undertaking Letter, Lenny Ventures agreed that after receiving an initial deposit of $1,250,000.00 it would block the distribution of funds for a period of eight months and one day. Further, the Undertaking Letter provided that the "funds were not permitted to be withdrawn, move or transferred . . . without written approval notice from [Plastic-View]." Pursuant to the Undertaking Letter, Lenny Ventures was required to obtain a bank guarantee within three banking days of receiving the funds. MSL therefore believed that any deposit it paid to Plastic-View would remain untouched and was refundable at any time. MSL would not have agreed to the transaction with Plastic-View and Lenny Ventures without this protection.

15. On January 3, 2022, Plastic-View as "the Seller," Lenny Ventures as the Seller's "Nominee," and MSL as the "Buyer" entered into a Sale and Purchase Agreement with MSL (the "SPA"). A true and correct copy of the SPA is attached as Exhibit 2 (excluding pages 17 and 19, which contain copies of individuals' passports). Although the SPA is dated December 30, 2021, it was not signed by MSL until January 3, 2022.

16. Under the SPA, Plastic-View agreed to supply Cranberry Evolve 300, Powder Free Nitrile Examination Gloves for Medical & Dental application ("Product"). Ex. 2, ¶3(a).

17. Pursuant to Section 10(a) of the SPA, MSL agreed to deposit $1,250,000.00 to Plastic-View "or its nominee's account" within two business days. Plastic-View "and/or" its nominee was obligated to obtain issuance of a bank guarantee in the same amount. *Id.* ¶ 10(a). Under the SPA, Plastic-View identified Lenny Ventures as its nominee and required that MSL make the initial deposit to Lenny Ventures. *Id.* ¶ 11(b).

18. Plastic-View represented and warranted that it had the ability to deliver the Product per the schedule set forth in the SPA. *Id.* ¶ 3(c). In addition, Plastic-View

- 4 -
COMPLAINT

was obligated to arrange for an inspection of the Product at Plastic-View's warehouses prior to each delivery. *Id.* ¶¶ 6, 14.

19. Upon receipt of the deposit, Plastic View had fifteen days to deliver the first tranche of gloves. *Id.* ¶¶ 10(b), 13. Plastic-View represented that this initial shipment was "on-the-ground" ("OTG") and agreed to deliver the remaining amounts pursuant to a monthly delivery schedule. *Id.* ¶¶3(b), 13.

20. Section 23(k) permitted Plastic-View to treat the SPA as "terminated by the Seller's breach" in "the event that any of the Product are not supplied in accordance with the [SPA]" and to require "repayment of any part of the purchase price." *Id.* ¶ 23(k). In addition, Section 26(c) granted MSL "the right to cancel the Agreement" and obligated Plastic-View to refund the deposit if an inspection did not place within fifteen days of receiving the deposit. *Id.* ¶ 26(c).

21. The SPA also contains a "time-is-of-the-essence" clause. *Id.* ¶ 27(d). During negotiations, MSL repeatedly informed Plastic-View that delivery of the Product within the proscribed time frames was essential to MSL's business.

## II. MSL Pays the $1.25 Million Deposit; The Goods Were Never Delivered.

22. On January 5, 2022, per the terms of the SPA, MSL wired $1,250,000.00 to Plastic-View's nominee Lenny Ventures' (the "Deposit") Chase Bank Account, with an address of a bank branch located in Fairfax, Virginia (the "Chase Account"). Both Plastic-View and Lenny Ventures confirmed receipt of the funds within 48 hours. At no point between signing the SPA and MSL's wiring the Deposit did Plastic-View inform MSL that there was any issue with delivering the first tranche within the scheduled time frame.

## III. Plastic-View and Lenny Ventures Breach the SPA

23. Once MSL wired the Deposit, Plastic-View had fifteen days to arrange for an inspection and the delivery of the Product. Ex. 2 ¶¶ 10 (b), 14. Therefore the first the first delivery should have taken place no later than January 20, 2022, with

Plastic-View arranging an inspection at its warehouses prior to that day. Plastic-View and Lenny Ventures were also obligated to secure the issuance of a bank guarantee no later than January 10, 2022. Ex. 1, Ex. 2 ¶ 10(b). None of these events took place.

24. Following receipt of the Deposit, Plastic-View initially confirmed that an inspection would take place on January 15, 2022, but did not provide key details such as the time and place of the inspection. When MSL asked for this essential information, Plastic-View responded by cancelling the inspection just one day before it was scheduled. Given the time-is-of-the-essence clause in the SPA, MSL immediately responded that any postponement was unacceptable. Plastic-View's failure to arrange for a timely inspection and a subsequent delivery also amounted to breaches of the SPA. Excuse after excuse followed.

## IV. MSL and Plastic-View Enter into an Amended SPA as MSL Holds Out Hope that the Deal Can be Salvaged

25. Even as delays continued to mount, MSL worked with Plastic-View in hopes of salvaging the agreement.

26. On or about January 17, 2022, Plastic-View asked MSL to sign an amendment to the prior agreement. Under this amendment, Plastic-View agreed to increase the amount of goods for delivery. Plastic-View also agreed to increase the quantity of Product contained in the initial delivery. As MSL had already paid the initial $1.25 million deposit to Plastic-View/Lenny Ventures (and both parties confirmed receipt), MSL understood these to be the only material changes to the agreement (the "Amended SPA"). A true and correct copy of the Amended SPA is attached as Exhibit 3 (excluding pages 14 and 16, which contain copies of individuals' passports).

27. Unfortunately, the Amended SPA did little to remedy the situation. Yet another inspection was scheduled and then cancelled at the last minute. As of January 18, 2022, MSL had not received, nor even had the opportunity to inspect, a single shipment. MSL was not even provided with the address for Plastic-View's

warehouses. Nor had MSL received the agreed upon bank guarantee for its $1,250,000.00 Deposit.

28. On January 18, 2022, MSL wrote to Plastic-View demanding scheduling of an inspection that week and immediate issuance of a bank guarantee. MSL followed up the next day again asking for issuance of a bank guarantee no later than January 21, 2022 and confirming a scheduled inspection on January 22, 2022.

29. Rather than comply with its obligations, Plastic-View continued to give MSL the run around. When asked about the status of the bank guarantee, (which was at that point nearly two weeks overdue), Plastic-View's CEO directed MSL to contact its Operations Director instead. Yet no one at Plastic-View was able to provide any update on the status of the bank guarantee.

30. Desperate to receive the initial delivery, MSL continued to work with Plastic-View even as Plastic-View's material breaches continued to mount. On January 23, 2022, Plastic-View provided assurance to MSL that an initial shipment of goods was stored in several Southern California warehouses and would be available for inspection on January 25, 2022. Again, MSL asked for the inspection details. Again, it did not receive them. Instead, MSL received "access cards" for three random individuals, not its own inspectors. The access cards appeared to be of dubious authenticity and had no information regarding the warehouses. Moreover, MSL was never given the address of the warehouses. Even if the access cards were real, there is no way MSL could have inspected the Product.

**V. Plastic-View and Lenny Ventures Refuse to Return MSL's Deposit**

31. Between January 25, 2022 and February 2, 2022, MSL exchanged numerous communications with Plastic-View. Each time Plastic-View assured MSL that it was doing its best to perform under the SPA. Yet no performance ever materialized.

32. On February 2, 2022, MSL wrote to Plastic-View concluding that Plastic-View was unable to deliver the Product. MSL demanded the immediate return

of its Deposit, per Section 26(c) of the SPA.

33. Rather than return the Deposit, as required under the SPA, Plastic View responded on February 4, 2022 that it was "trying to track the funds." This response made little sense as the Deposit was wired to the Chase Account as directed in the SPA and could not be disbursed without Plastic-View's written consent. Facilitating return of the Deposit should have been as simple as writing to Lenny Ventures to demand the immediate return of the funds to MSL. Plastic-View inexplicably failed to make this demand.

34. Instead, Plastic-View claimed that it was working on sending a letter to Chase Bank. Although Plastic-View provided a copy of a letter, it never provided any evidence or assurance that it sent the letter to Chase Bank. Again, Plastic-View feigned ignorance, claiming that it needed time "to identify the proper person or department to contact."

35. When MSL attempted to take matters into its own hands by contacting Lenny Ventures directly, Plastic-View objected. Plastic-View suggested that MSL was somehow interfering by attempting to obtain the return of MSL's own money.

36. On February 10, 2022, after MSL's repeated requests for the immediate return of its Deposit went unheeded, counsel for MSL wrote to Plastic-View requesting the return of the Deposit within seven business days or the immediate issuance of a bank guarantee as required under the SPA. Plastic-View did not respond to the letter.

**VI. MSL Cancels the SPA and Amended SPA and Again Demands Return of Its Deposit, All to No Avail**

37. On March 17, 2022, in view of the numerous material breaches of the SPA and Amended SPA, counsel for MSL wrote to Plastic-View and Lenny Ventures and unequivocally cancelled the agreements. MSL demanded that Plastic-View and Lenny Ventures immediately return the Deposit. To this end, MSL demanded that the

two entities undertake all steps necessary to facilitate the immediate return of the Deposit.

38. As of the time of the filing of this Complaint, no response was received from Lenny Ventures.

39. Plastic-View, on the other hand, responded, claiming that it was "diligently working on resolving the issue." Plastic-View did not state what steps it was taking, if any, to "resolve the issue," and ignored MSL's request to return MSL's Deposit.

40. On March 23, 2022, MSL responded to Plastic-View by pointing out that it had cancelled the agreements and again demanding that Plastic-View take action to arrange for the immediate return of the Deposit. MSL asked Plastic-View to immediately provide written confirmation that it had directed Lenny Ventures to return the Deposit to MSL.

41. On March 28, 2022, Plastic-View sent a demand letter to the United Kingdom entity ACM and Lenny Ventures. On information and belief, Plastic-View intended to source the Product from ACM. The letter called for the return of MSL's Deposit but provided no assurance that the funds would be returned. Plastic-View's, CEO, Chris Voges, claimed in the letter that this was his first direct communications with either ACM or Lenny Ventures. Yet, Plastic-View is the party who identified Lenny Ventures as the nominee in the SPA and directed MSL to wire money to Lenny Ventures to hold in escrow. The letter also confirms that Plastic-View did not previously request the return of the funds, as directed by MSL. As of the filing of this Complaint there has been no further response from Plasti-View, ACM or Lenny Ventures.

42. As it stands, nearly three months after entering into the SPA, MSL has nothing but significant losses to show for it. MSL has yet to conduct an inspection or receive a single shipment of the Product. Everyday MSL's losses continue to mount.

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Plastic-View and Lenny Ventures)**

43. Plaintiff MSL hereby incorporates in this case of action each and every one of the foregoing paragraphs as though fully set forth herein.

44. On or about December 30, 2021, MSL entered into a contract with Plastic-View and Lenny Ventures to purchase Cranberry Evolve 300, Powder Free Nitrile Examination Gloves for Medical & Dental application. Ex. 2 ¶¶ 3(a), 9(b).

45. Plastic-View identified Lenny Ventures as its nominee and directed MSL to make an initial deposit of $1,250,000.00 into Lenny Ventures' Chase Account. Once MSL wired the Deposit, Plastic-View was obligated to arrange for an inspection of the Product and deliver the initial shipment to MSL within fifteen days. *Id.* ¶¶ 10, 13, 14. Failure to arrange for either an inspection or delivery within the proscribed time period amounted to a breach of the SPA entitling MSL to cancel the SPA and demand return of its Deposit. *Id.* ¶¶ 23(k), 26(c), 27 (d). Upon receipt of the Deposit, Plastic-View and Lenny Ventures were also obligated to arrange for issuance of a bank guarantee within three banking days. Ex. 1, Ex. 2 ¶ 10(a).

46. On or about January 5, 2022, per the terms of the SPA, MSL wired $1,250,000.00 to Plastic-View's nominee Lenny Ventures' (the "Deposit") Chase Bank Account in Fairfax, Virginia (the "Chase Account"). Both Plastic-View and Lenny Ventures confirmed receipt of the funds within 48 hours.

47. Plastic-View was obligated to arrange for MSL to inspect the initial shipment prior to its delivery. Thus, Plastic-View had to arrange for MSL to inspect the goods prior to January 20, 2022. Plastic-View was obligated to delivery the initial shipment no later than January 20, 2022. Plastic-View and Lenny Ventures were obligated to arrange for issuance of a bank guarantee no later than January 10, 2022.

48. Plastic-View failed to arrange for an inspection of the Product by MSL. Plastic-View also failed to deliver any of the Product to MSL, let alone arrange for

delivery by the January 20, 2022 deadline.

49. Plastic-View and Lenny Ventures likewise failed to arrange for issuance of a bank guarantee for the Deposit, in violation of the SPA.

50. On February 2, 2022, MSL wrote to Plastic-View concluding that Plastic-View was unable to deliver the Product as agreed under the SPA. MSL demanded the immediate return of its Deposit, per Section 26(c) of the SPA. Neither Plastic-View nor Lenny Ventures returned the Deposit.

51. On February 10, 2022, after MSL's repeated requests for the immediate return of its Deposit went unheeded, counsel for MSL wrote to Plastic View requesting the return of the Deposit within seven business days or the immediate issuance of a bank guarantee as required under the SPA. Plastic-View never responded to the letter.

52. On March 17, 2022, in view of the numerous material breaches of the SPA and Amended SPA, counsel for MSL wrote to Plastic-View and Lenny Ventures and unequivocally cancelled the agreements. MSL demanded that Plastic-View and Lenny Ventures immediately return the Deposit. To this end, MSL demanded that the two entities undertake all steps necessary to facilitate the immediate return of the Deposit.

53. On March 23, 2022, counsel for MSL wrote a third letter to Plastic-View in response to Plastic-View's March 21, 2022 letter. The third letter renewed MSL's cancellation of the SPA as of March 17, 2022 and reiterated the demand for the immediate return of MSL's Deposit.

54. Plastic-View and Lenny Ventures have not returned the Deposit. A bank guarantee never issued. Plastic-View never arranged for an inspection of the Product and Plastic-View never delivered any of the promised product.

55. MSL has performed all conditions, covenants and promises required on its part to be performed in accordance with the SPA and Amended SPA, except for any performance that was excused by Plastic-View and Lenny Ventures' breaches.

56. Plastic-View breached the SPA and Amended SPA by failing to deliver the Product (and arrange for inspections prior to delivery) within the timeline provided in the SPA and Amended SPA .

57. Plastic-View and Lenny Ventures breached the SPA and amended SPA by failing to obtain a bank guarantee as required.

58. Plastic-View and Lenny Ventures also breached the SPA and Amended SPA by failing to return the Deposit as required.

59. MSL has been damaged by Plastic-View's breaches of the SPA and Amended SPA in an amount that will be proven at trial.

60. MSL has been damaged by Lenny Ventures' breaches of the SPA and Amended SPA in an amount that will be proven at trial.

## SECOND CAUSE OF ACTION
## MONEY HAD AND MONEY RECEIVED
### (Against All Defendants)

61. Plaintiff MSL hereby incorporates in this case of action each and every one of the foregoing paragraphs as though fully set forth herein.

62. Defendants received the $1,250,000.00 Deposit to be used for the benefit of MSL (the "Deposit");

63. The Deposit was not used for MSL.

64. The Defendants refused to return the $1,250,000.00 to MSL.

65. MSL is rightfully entitled to the $1,250,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MSL prays for the following relief:

1. For all actual and compensatory damages according to proof at trial;
2. For a constructive trust in favor of MSL consisting of the $1,250,000.00 Deposit, as alleged above;
3. For MSL's costs in this suit;

4. For prejudgment interest to the maximum extent recoverable by contract or law;

5. For imposition of a constructive trust over any funds belong to MSL that were received by and/or are within the custody, possession or control of Defendants;

6. For an attachment or other provisional remedy against the $1,250,000.00 or other property of the Defendants;

7. For an injunction prohibiting Defendants from using, transferring, promising or otherwise encumbering the $1,250,000.00 Deposit; and

8. For such other relief as this Court may deem necessary or appropriate.

DATED: March 31, 2022          **CYPRESS LLP**

By:  */s/* Robert Muller
    Robert Muller
    Jessica P.G. Newman
    Attorneys for Plaintiff
    MILLION SOURCE LIMITED, INC.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiff Million Source Limited, Inc. demands trial by jury as to all claims triable of right before a jury.

DATED: March 31, 2022          **CYPRESS LLP**

By:  */s/* Robert Muller
    Robert Muller
    Jessica P.G. Newman
    Attorneys for Plaintiff
    MILLION SOURCE LIMITED, INC.